UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

**James Roy Mickelson,**     Civil No. 06-995 (JNE/SRN)

      **Plaintiff,**

                                **REPORT AND RECOMMENDATION**

v.

**Carol Holinka, Warden and
Michele Kunkel, Case Manager**

      **Defendants.**

---

James Roy Mickelson, pro se

Patricia R. Cangemi, Esq., Assistant United States Attorney, on behalf of Defendants

---

SUSAN RICHARD NELSON, United States Magistrate Judge

      The above-entitled matter comes before the undersigned United States Magistrate Judge on Defendants' Motion to Dismiss or for Summary Judgment (Doc. No. 10.) This motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636 and Local Rule 72.1(c).

      For the reasons set forth below, this Court recommends that Defendants' motion be granted.

**I.    PROCEDURAL AND FACTUAL BACKGROUND**

      On March 7, 2006, Plaintiff, an inmate at the Federal Correctional Institution in Waseca, Minnesota (FCI-Waseca), filed a civil action against Defendants in their individual and official capacities, alleging that Defendants violated his constitutionally protected rights. (Compl. at 2.) At all times relevant to the Complaint, Plaintiff was an inmate at FCI-Waseca, Defendant Holinka held the position of Warden and Defendant Kunkel was a Case Manager at the facility. (Id.)

The Court construes Plaintiff's complaint as claiming that Defendant Kunkel and Defendant Holinka violated his constitutional rights under the Fifth and Fourteenth Amendments by denying him access to a court of law and due process when Defendant Kunkel allegedly failed to provide Plaintiff with advance notice that his divorce hearing would occur on March 11, 2004, and then limited his participation in the hearing to only one hour. (Compl. at 3.) Plaintiff requests compensatory damages of $1,000,000 and punitive relief of $2,000,000 from each defendant. (Id. at 4.) Defendants brought the present motion to dismiss the action pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) or, in the alternative, for summary judgment under Federal Rule of Civil Procedure 56. (Doc. No. 10.) Plaintiff opposes Defendants' motions, but has not filed any affidavits or other admissible evidence which supports his position.

Plaintiff's claims stem from the events surrounding his participation by telephone in his divorce hearing on March 11, 2004. The divorce hearing took place at the Bottineau County Courthouse in Bottineau, North Dakota. (Bitz Decl., Att. F.) Plaintiff alleges that, without prior notice that the hearing would even occur on that day, he was called to Defendant Kunkel's office to testify by telephone. (Compl. at 3.) Plaintiff asserts that, after the hearing proceeded for one hour, Defendant Kunkel suddenly informed him that only one hour had been allotted for his appearance, and then physically removed the telephone from his hand and hung it up. (Id. at 3A.) He alleges that the judge, presiding over his divorce, later awarded his family farm, irreplaceable memorabilia collection, an unspecified amount of money from the former couple's joint account, and his tools, which he claims are essential to his livelihood, to his former wife. (Id.) Plaintiff claims that the termination of his participation by telephone precluded him from objecting to or contesting the court's ruling and retaining ownership of his

2

family farm.  (Id.)

According to the hearing transcript, Plaintiff's divorce hearing began at about 9:15 a.m.  (Bitz Decl., Att. F.)  Contrary to Plaintiff's claims, he made his first appearance shortly after the proceeding began and his telephonic connection ended shortly before 12:00 p.m.  (Id.)  During this time, he provided testimony and raised objections.  (Bitz Decl., Att. F.)

On May 26, 2004, Plaintiff filed an Informal Resolution Attempt, the first in a series of administrative complaints, in which he alleged that someone was denying him "court information" and that he was being denied access to courts, although he did not explicitly reference his divorce matter or any surrounding event.  (Doc. No. 1.)  This request was denied for Plaintiff's failure to provide specific information.  (Id.)

On December 13, 2004, the North Dakota court presiding over Plaintiff's divorce issued its Findings of Fact, Conclusions of Law and Order for Judgment.  (Bitz Decl., Att. E.)  The judgment contained a decree of divorce, a division of personal property, provisions for child support and other related matters.  (Id.)

Eventually, Plaintiff filed seven formal Administrative Remedy Requests, five at FCI-Waseca, between February 1, 2005 and May 17, 2005.  (Bitz Decl. at 3.)  These requests for remedies asserted various complaints against Defendant Kunkel, including that she violated his right of access to courts and denied him due process.  (Bitz Decl., Att. G.)  None of his administrative requests mentioned Defendant Holinka.  (Id.)  Various Bureau of Prison officials rejected these complaints because Plaintiff filed his requests in an untimely manner.  (Id.)

## II.   DISCUSSION

In light of the fact that Defendants make this motion in the alternative and rely on an extensive factual record presented to the Court by way of affidavits, this Court will construe this motion as a Rule 56 motion for summary judgment. Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. A non-moving party cannot rely on the "mere existence of *some* alleged factual dispute between the parties [to] defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

"[R]egardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the moving party shows–"that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case," Id. at 325, "Rule 56(e) [] requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id.  Thus, a non-moving party cannot simply rely on assertions made in the pleadings to avoid summary judgment. Krein v. DBA Corp., 327 F.3d 723, 726 (8th Cir. 2003). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear

4

the burden of proof at trial," then Rule 56(c) requires the entry of summary judgment against such party. Celotex Corp. v. Catrett, 477 U.S. at 322-23 (1986); accord Reed v. Woodruff County, 7 F.3d 808, 810 (8th Cir. 1993). All evidence will be viewed in the light most favorable to the nonmoving party, e.g., Vette Co. v. Aetna Casualty & Surety Co., 612 F.2d 1076, 1077 (8th Cir. 1980), and *pro se* pleadings are more liberally construed than those drafted by an attorney. Smith v. St. Bernards Regional Med. Ctr., 19 F.3d 1254, 1255 (8th Cir. 1994).

### A. Official Capacity Claims

Defendants argue that any claims against them in their official capacities are barred by sovereign immunity. "It is well settled that 'an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.'" Buford v. Runyon, 160 F.3d 1199, 1201 n.3 (8th Cir. 1998) (citing Kentucky v. Graham, 473 U.S. 159, 166 (1985)). Moreover, "[i]t is well settled that [such] an action cannot be prosecuted against the United States and its agencies because of sovereign immunity." See Buford, 160 F.3d at 1203. Therefore, sovereign immunity bars these claims. See also United States v. Mitchell, 445 U.S. 535, 538 (1980). Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, however, does permit claims against federal officials acting in their individual capacities for alleged violations of constitutionally protected rights. 403 U.S. 388 (1971). These individual capacity claims nonetheless fail for a variety of other reasons discussed below.

### B. Individual Capacity Claims

#### 1. Exhaustion of Remedies

Defendants contend that the Court should dismiss Plaintiff's claims against them in their individual capacities because he failed to exhaust his administrative remedies under 28 C.F.R. §§

542.10-542.16, as his requests for administrative remedies were filed in a clearly untimely manner. The PLRA requires a prisoner to exhaust all available administrative remedies prior to bringing suit:

> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. §1997e(a). The Supreme Court has affirmed that the congressional intent of the PLRA was to require that all administrative remedies be exhausted prior to the filing of a complaint in federal court. Booth v. Churner, 532 U.S. 731, 734, 740 (2001); Ricks v. Peterson, 26 Fed. Appx. 588, at *1 (8th Cir. 2001) (applying Booth in a Bivens case). In Booth, an inmate filed a complaint under 42 U.S.C. § 1983, and failed to pursue his administrative grievance through the intermediate or final review steps. Booth, 532 U.S. at 734-35. The Supreme Court affirmed the District Court's dismissal of Booth's complaint without prejudice for failure to exhaust the available state remedies. Id.

As noted in Booth, the Bureau of Prisons maintains a three-step administrative remedy process, codified at 28 C.F.R. §§ 542.10-542.16. This three-step process provides federal inmates an opportunity to voice their grievances and resolve issues informally with prison staff prior to seeking relief through the judicial system. Under the procedure, after informal resolution fails, the inmate must present a complaint at the institution where the alleged violation took place. 28 C.F.R. § 542.13. If the response is not satisfactory, the inmate may then appeal the adverse decision to the regional director. 28 C.F.R. § 542.15(a). If that response is not satisfactory, the inmate may appeal to the Bureau of Prisons' general counsel. Id.

Under 42 U.S.C. § 1997e(a), "proper exhaustion" of an inmate's administrative remedies is required. Woodford v. Ngo, 126 S.Ct. 2378, 2387 (2006). "Proper exhaustion demands compliance

6

with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 2386. Under the Bureau of Prisons' procedure, a prisoner must present his complaint at the institution where the violation took place within twenty days following the date of the alleged violation. 28 C.F.R. § 542.14(a). "If accepted, a Request or Appeal is considered filed on the date it is logged into the Administrative Remedy Index as received." 28 C.F.R. § 542.18. Finally, proper exhaustion is required with respect to every claim and every defendant. Abdul-Muhammad v. Kempker, 450 F.3d 350, 352 (8th Cir. 2006).

If there is no proof of full exhaustion, the complaint can be dismissed for failure to exhaust. Graves v. Norris, 218 F.3d 884, 885 (8th Cir. 2000)(district court properly dismissed complaint when there were at least some unexhausted claims at time of filing); McAlphin v. Morgan, 216 F.3d 680, 682 (8th Cir. 2000).

As a preliminary matter, none of Plaintiff's complaints mention Defendant Holinka. (Bitz Decl., Att. G.) Therefore, Plaintiff failed to exhaust his administrative remedies as against her and the Court recommends that Defendant Holinka be granted summary judgment on these grounds.

Turning the Court's attention to Plaintiff's claims against Defendant Kunkel, it is undisputed that Plaintiff did not comply with the timeliness requirements of 28 C.F.R. § 542.14(a). Plaintiff filed his first formal Administrative Remedy Request on February 1, 2005, more than ten months after March 11, 2004. (Bitz Decl., Att. G.) Bureau of Prison officials denied this request and his subsequent administrative filings on this basis. (Id.) Accordingly, the Court finds that Plaintiff has failed to properly exhaust his administrative remedies against Defendant Kunkel as well. The Court recommends that

Defendant Kunkel be granted summary judgment on these grounds. Nonetheless, the Court will address the issue of qualified immunity as an alternative basis for summary judgment.

### 2. Qualified Immunity

Defendants claim that they are entitled to qualified immunity from suit, and therefore, summary judgment. "Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'" Saucier v. Katz, 533 U.S. 194, 200 (2001) (citation omitted). Rather than a mere defense to liability, qualified immunity is an immunity from suit. Id. at 200-201. When a plaintiff claims that a government official has violated a constitutional right, "the requisites of a qualified immunity defense must be considered in proper sequence." Id. The threshold question is whether the alleged facts, taken in the light most favorable to the nonmoving party, show that the official's conduct violated a constitutional right. Id. at 201. If no constitutional right would have been violated were the allegations established, then qualified immunity is established. Id. If, however, the facts support a constitutional violation, the next sequential step is to ask whether the right was clearly established. Id. This inquiry is fact-specific: "the relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted." Id. at 202.

Plaintiff argues that Defendant's actions violated his constitutional rights under the Fifth and Fourteenth Amendments. To the extent that Plaintiff alleges claims under the Fourteenth Amendment, these claims must fail as the Fourteenth Amendment does not apply to federal actions taken by federal officials. See Moore v. Carpenter, 404 F.3d 1043, 1046 (8th Cir. 2005); Bishop v. Tice, 622 F.2d 349, 353 (8th Cir. 1980); Betts v. Brady, 316 U.S. 455, 462 (1942) ("Due process of law is secured

against invasion by the federal Government by the Fifth Amendment and is safeguarded against State action in identical words by the Fourteenth."), *overruled on other grounds by* Gideon v. Wainwright, 372 U.S. 335 (1963). The Court will address Plaintiff's claims as against each Defendant in turn.

### a. Defendant Kunkel

Plaintiff claims that Defendant Kunkel impaired his constitutional right of access to courts and denied him due process when she did not provide him with notice that his divorce hearing would occur on March 11, 2004, and when she failed to provide him with notice that he would only be allowed to testify for one hour. However, Plaintiff fails to submit any admissible evidence beyond summary allegations to that effect.

In contrast, Defendants produced considerable evidence that Plaintiff in fact received notice in advance that his divorce hearing would occur on March 11, 2004. In her declaration, Defendant Kunkel states that she spoke with Plaintiff on February 27, 2004, and advised him that she would make arrangements for him to participate by telephone in his divorce hearing on March 11, 2004. (Kunkel Decl. at 2.) Moreover, prison records indicate that, on February 27, 2004, Plaintiff received notice from his former wife's divorce counsel that the divorce hearings would occur on March 11, 2004. (Bitz Decl., Att. C-D; Kunkel Decl. at 2; Kunkel Decl., Att. A.) It is undisputed that the following exchange occurred shortly after Plaintiff's divorce hearing began:

| | |
|---|---|
| Plaintiff's counsel: | I have now talked to Mr. Mickelson. ... We have come to an agreement that I will be representing him in this hearing, and he understands that I have the limited ability to investigate, and he takes full responsibility for my coming in at this late date. He – and with that in mind, he is fully aware that the court will not grant an extension, and so I am not applying for a continuance or extension and he is ready to proceed. |
| The Court: | Okay. Mr. Mickelson, did you hear what Mr. Ackre said? |

| | |
|---|---|
| Plaintiff: | Yes, I did. I had some trouble hearing a few things at the beginning, but I heard everything Mr. Ackre said, yes. |
| The Court: | Okay, and you are in agreement with that? |
| Plaintiff: | Yes, I am. |
| The Court: | And for the record, I will state that the court would not have granted a continuance because it had earlier indicated that an attorney had to be hired within a certain number of days and, and this was set as the trial a date ... |

(Bitz Decl., Att. F.) This portion of the transcript does not support an inference that Plaintiff lacked notice of the hearing. To the contrary, it demonstrates that Plaintiff knew he would be participating in the hearing on that date and that Mr. Ackre would be representing him as counsel. Plaintiff has produced no admissible evidence to the contrary, and in his responsive memorandum fails to even address the notice he received from his former wife's counsel. He simply relies on the summary allegations to the contrary in his complaint and in the administrative record.

The record similarly contains no evidence that Plaintiff lacked notice that his participation in the hearing would be limited. Just before opening arguments, the North Dakota judge requested that counsel keep opening remarks "relatively brief" because he had arranged for Plaintiff to be present by telephone for only two hours. (Bitz Decl., Att. F.) Neither Plaintiff nor his counsel objected to the arrangement at that time.

Plaintiff did object to concluding his participation by phone nearly three hours later but the judge, after considering the objection, ruled that Plaintiff had fairly participated in the hearing. Plaintiff's telephonic participation in his divorce hearing ended with the following exchange:

| | |
|---|---|
| The Court: | I think we've covered this territory good enough. Okay then, I guess we'll end this part of it then, Mr. Mickelson, and I do appreciate your trying to cooperate as best you can. Mr. Ackre will be representing you then throughout the rest of these proceedings. Michelle, I want to thank you. We took more time than we asked you for, but we do appreciate that, too. |

| | |
|---|---|
| Ms. Kunkel: | Your welcome. |
| Plaintiff: | I have one more thing for the record. |
| The Court: | Okay. Go ahead. |
| Plaintiff: | I would like to point out that I'm being denied access to the court by terminating my telephonic court hearing. |

\* \* \*

| | |
|---|---|
| The Court: | ... And I understand your objection that you made, you know, that it's being terminated, but I think I, you know, I've given you adequate time and you're going to have an attorney who can handle the rest of it ... |

\* \* \*

| | |
|---|---|
| The Court: | ... Thank you sir. Have a good day, and thank you Michelle, too. |
| Ms. Kunkel: | Thank you. |
| The Court: | Have a good day. |
| Ms. Kunkel: | Yup. |

[Mr. Mickelson's telephonic connection ended]

(Id.)

Finally, Plaintiff also fails to submit any admissible evidence that supports the inference that Defendant Kunkel materially limited his testimony by telephone. Defendants produced considerable evidence demonstrating that Plaintiff was present by telephone for well over two hours, until the North Dakota judge ruled that the record was adequate. Defendant Kunkel declares that she did not suddenly take the telephone away from Plaintiff after one hour, but instead permitted Plaintiff to be present for over two hours. (Kunkel Decl. at 2.) It is clear that the North Dakota judge terminated Plaintiff's participation in the hearing, and not Defendant Kunkel. Plaintiff has produced no evidence to rebut this inference and has failed to demonstrate that Ms. Kunkel caused any constitutional injury.

In addition, Plaintiff does not complain that he could not give his full testimony. Rather he argues that his ability to strategize with his counsel was limited. It appears, however, that Plaintiff only obtained counsel at 3 p.m. on the day before the hearing, after apparently intending to represent himself pro se. (Bitz Decl., Att. F, G, Kunkel Decl., Att A.) Any difficulty he had in effectively strategizing for

11

the hearing was due to his own decision to hire counsel at the last minute. Holloway v. Dobbs, 715 F.2d 390, 392 (8th Cir. 1983) (A prisoner is not denied access to court when represented by an attorney and that attorney's access to court is not impaired); Cook v. Boyd, 881 F. Supp. 171 (E.D. Pa. 1995) aff'd 1996 U.S. App. LEXIS 12101 (3d. Cir. 1996) (In the child custody context, a prisoner's due process right to protect family interests is not violated if he was represented by counsel at a custody hearing, and given an opportunity to present testimony in some form and cross examine witnesses – even if he was wholly denied the opportunity to participate by telephone).

Plaintiff has failed to identify any genuine issue of material fact regarding any of his allegations. Despite the fact that Plaintiff received an extension of time during which to respond to Defendants' motion for summary judgment, he failed to do so. The Court recommends that Defendant Kunkel be granted summary judgment.

### b.     Defendant Holinka

In a Bivens action, a federal official cannot be vicariously liable for the acts of his subordinates under the doctrine of respondeat superior, unless he was personally involved in, or participated in the unconstitutional acts. See Estate of Rosenberg by Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995). The general responsibility of a warden for supervising the operation of a prison is not sufficient to establish personal liability. Id. (citations omitted).

Plaintiff's claims against Warden Holinka allege that, by virtue of her position, she was responsible for Defendant Kunkel's actions, and that she "felt there was 'no reason to take corrective action.'" (Pl.'s Mem. Opp. Mot. Dismiss. at 1.) The Plaintiff fails to allege, or produce any evidence to

demonstrate, how Warden Holinka was personally involved in any alleged constitutional violation beyond her supervisory capacity as warden. Accordingly, the Court recommends that Warden Holinka be granted summary judgment.

Based upon the foregoing and all the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED that:**

1. Defendants' Motion for Summary Judgment (Doc. No. 10) be **GRANTED** as described herein.

Dated: January 19, 2007

    s/ Susan Richard Nelson
SUSAN RICHARD NELSON
United States Magistrate Judge

Under D. Minn. LR 72.1(c)(2) a party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **February 5, 2007**, a writing which specifically identifies those portions of this Report which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order of judgment of the District Court, and it is therefore not appealable to the Circuit Court of Appeals.